UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| PRESTON DAMSKY,<br><br>     *Plaintiff*,<br><br> v.<br><br>CHRIS SUMMERLIN, in his official capacity as Dean of Students of the University of Florida,<br><br>     *Defendant*. | No.: 1:25-cv-00275-AW-MAF |

**DEFENDANT'S REPLY MEMORANDUM IN
<u>FURTHER SUPPORT OF MOTION TO DISMISS</u>**

H. Christopher Bartolomucci
D.C. Bar No. 453423
Justin A. Miller*
D.C. Bar No. 90022870
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
cbartolomucci@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Defendant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT .............................................................................................................1

    I.    The Materials That Summerlin Submitted Should Be Considered Here. ...............................................................................................................1

    II.    Damsky's Posts Were True Threats. ........................................................2

    III.    Damsky's Post Caused Substantial Disruption. .........................................3

    IV.    The University Properly Responded to Damsky's Off-Campus Post. ..................................................................................................................5

    V.    Damsky Does Not Dispute That His Damages Claims Must Be Dismissed ..............................................................................................................5

    VI.    No Alleged Procedural Defect Exists Here. ................................................5

CONCLUSION ..........................................................................................................6

CERTIFICATION UNDER LOCAL RULE 7.1(F) ..................................................7

CERTIFICATE OF SERVICE ..................................................................................8

## TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Boim v. Fulton Cnty. Sch. Dist.*,
   494 F.3d 978 (11th Cir. 2007)...........................................................................4

*Brown v. Fla. Dep't of Rev. Off. of Child Support Enf't*,
   697 F. App'x 692 (11th Cir. 2017)....................................................................5

*Counterman v. Colorado*,
   600 U.S. 66 (2023) .............................................................................................3

*Doe v. Valencia Coll.*,
   903 F.3d 1220 (11th Cir. 2018).......................................................................4, 5

*Johnson v. City of Atlanta*,
   107 F.4th 1292 (11th Cir. 2024) .....................................................................1, 2

*Kansans for Const. Freedom v. Kobach*,
   789 F. Supp. 3d 1062 (D. Kan. 2025)................................................................3

*Mardis v. Hannibal Pub. Sch. Dist.*,
   684 F. Supp. 2d 1114 (E.D. Mo. 2010).............................................................4

*Sealed Pl. 1 v. Front*,
   No. 3:22-cv-00670, 2024 WL 1395477 (E.D. Va. Mar. 31, 2024).....................3

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
   393 U.S. 503 (1969) .......................................................................................4, 5

*United States v. Anwar*,
   741 F.3d 1134 (10th Cir. 2013).........................................................................4

*United States v. Dudley*,
   463 F.3d 1221 (11th Cir. 2006).........................................................................4

*United States v. Snipes*,
   466 F. App'x 800 (11th Cir. 2012)....................................................................4

**Rules**

Fed. R. Civ. P. 12...............................................................................................2, 5

Fed. R. Civ. P. 56...................................................................................................2

This Court should grant Defendant Chris Summerlin's motion to dismiss Plaintiff Preston Damsky's complaint (Doc. 11). The University of Florida properly expelled Damsky based on his true threats and substantial disruption of the University, and Damsky has failed to rebut that showing (Doc. 29).

## ARGUMENT

**I.  The Materials That Summerlin Submitted Should Be Considered Here.**

Damsky argues that the materials Summerlin submitted are "not referenced in the Complaint," Doc. 29 at 3, but incorporated materials need not be referenced in the complaint so long as they are *central* to the plaintiff's claims and undisputed in their authenticity. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). In any event, Damsky *does* mention his "July 28, 2025 hearing" in several paragraphs of his complaint, Doc. 1 ¶¶ 21, 24–25, and he further describes events on that date in several other paragraphs, *id*. ¶¶ 14, 30, 35, 37.

Like the body camera and dashcam footage incorporated in *Johnson*, the materials here "clearly depict the events that are central to [the plaintiff's] claims." *Johnson*, 107 F.4th at 1301. Damsky argues that the materials are irrelevant to his claims because he challenges the constitutionality of the University's actions, not the accuracy of its "narrative." Doc. 29 at 3–4. But that same argument would have excluded the body camera and dashcam footage at issue in *Johnson*, where the constitutionality of the officers' actions was challenged.

Damsky claims that these materials are disputed, but he mentions only factual disputes in his response. The question here is whether the materials are "undisputed in terms of [their] authenticity." *Johnson*, 107 F.4th at 1298–99. Like the plaintiff in *Johnson*, Damsky "does not argue that the [materials] were altered in any way or do not depict what actually happened." *Id.* at 1301. In fact, the word "authenticity" does not appear anywhere in Damsky's response. In both *Johnson* and this case, the parties dispute what inferences follow from the incorporated materials. But that is irrelevant to whether the materials should be considered at all.[1]

## II.  Damsky's Posts Were True Threats.

Damsky's arguments that his posts were not true threats fall flat. No *mens rea* requirement exists in this civil proceeding. And this Court need not ignore the complaint and central documents showing that Damsky aimed his threat at the UF Law community. His posts were reasonably seen as a threat targeted at the law school community based on his ominous exchange with UF Law Professor Lidsky and his earlier UF Law seminar papers that included calls for violence (Doc. 11-2 at 3–14, Exs. I, J, K).

---

[1] If these materials cannot be considered on a motion to dismiss, this motion may be construed as one for summary judgment. *See* Fed. R. Civ. P. 12(d). Under Rule 56(d), Damsky must "specif[y] reasons" why he "cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). He has not done so.

2

True threats in a civil case do not require a showing of *mens rea*. *Cf.* Doc. 29 at 4. *Counterman v. Colorado*, 600 U.S. 66 (2023), required a showing of a *mens rea* because it was a criminal case. But courts have recognized that no *mens rea* requirement exists for civil cases involving true threats. *See*, *e.g.*, *Kansans for Const. Freedom v. Kobach*, 789 F. Supp. 3d 1062, 1081 (D. Kan. 2025); *Sealed Pl. 1 v. Front*, No. 3:22-cv-00670, 2024 WL 1395477, at *29 (E.D. Va. Mar. 31, 2024) ("*Counterman* [is] inapplicable in this civil lawsuit with no criminal statute at issue."). In any event, as a matter of law, Damsky demonstrated the requisite *mens rea* of recklessness. The message from Professor Lidsky put him on notice that his post was perceived as a threat, yet he failed to disclaim violence.

Damsky argues this Court cannot consider his papers' calls for violence, that he was on notice that students feared him, or that he confirmed his threat in his interaction with Lidsky. Doc. 29 at 5. But these materials are central to Damsky's claims and are undisputed in their authenticity, so they may be considered. And this Court is well equipped to determine the meaning of Damsky's words, even if it requires resorting to *Black's Law Dictionary*. *Cf.* Doc. 29 at 5.

### III.  Damsky's Post Caused Substantial Disruption.

Damsky's attempt to limit the substantial disruption framework to the K-12 context is not well taken. Doc. 29 at 5–7. Damsky notes that *Tinker* and *Boim* involved K-12 speech, *id.* at 6, but does not dispute that under Eleventh Circuit

3

precedent *Tinker* applies to higher education as well, *see* Doc. 11 at 30 (citing *Doe v. Valencia Coll.*, 903 F.3d 1220, 1229–31 (11th Cir. 2018)). In fact, Damsky mentions *Doe* only in the context of off-campus speech; he ignores its application of the *Tinker* substantial disruption standard to higher education. And Damsky fails to explain why *Boim* should be treated any differently than *Tinker*. Doc. 29 at 6–7.

Damsky argues that the substantial disruption framework does not apply here because the University was punishing his viewpoint and any disruption was "largely the product of audience reaction and administrative decisions," not anything that Damsky did. *Id.* at 6. But the threatening nature of Damsky's posts is neither a viewpoint nor protected speech. Substantial disruptions include increased security measures involving operational changes rather than mere implementation of standard routine safety protocols. *See, e.g.*, *United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006) (law enforcement officers diverted from other duties to provide security); *United States v. Snipes*, 466 F. App'x 800, 801–02 (11th Cir. 2012) (increased security and ID verification); *Mardis v. Hannibal Pub. Sch. Dist.*, 684 F. Supp. 2d 1114, 1123–24 (E.D. Mo. 2010), *aff'd*, 647 F.3d 754 (8th Cir. 2011) (significantly increased security and parent and student complaints that consumed majority of school official's time for a week); *United States v. Anwar*, 741 F.3d 1134, 1139–41 (10th Cir. 2013) (building shut down and evacuated, classes interrupted, school employees and police officers diverted from regular duties). Also, many UF

Law students were afraid to access their education because of Damsky's threat, and that interference with their educational rights constitutes disruption under *Tinker*.

### IV. The University Properly Responded to Damsky's Off-Campus Post.

Damsky's argument that the "off-campus nature" of his speech "weighs against dismissal" is unsupported. Doc. 29 at 7. Damsky does not dispute, *see id.* at 7–8, that the Eleventh Circuit considers whether speech "violates the rights of another student" and has held that schools are not "powerless to do anything about his misbehavior," even if "he did it all while he was off campus" during "the break between summer and fall classes." Doc. 11 at 27 (quoting *Doe*, 903 F.3d at 1231).

### V. Damsky Does Not Dispute That His Damages Claims Must Be Dismissed.

Damsky has no response to the binding precedent showing that his "damages [claims] should be dismissed whether or not his claim for declaratory and injunctive relief survives." Doc. 11 at 33. He merely reiterates that he is also seeking declaratory and injunctive relief, which is not in dispute. Doc. 29 at 8. Accordingly, this Court should dismiss Damsky's demand for damages, however else it rules.

### VI. No Alleged Procedural Defect Exists Here.

Damsky also argues that no Rule 12(b)(1) dismissal is on the table because Summerlin "identifies no jurisdictional bar." Doc. 29 at 8. But the Eleventh Circuit has recognized that Summerlin's uncontested Eleventh Amendment damages argument "is in the nature of a jurisdictional bar." *Brown v. Fla. Dep't of Rev. Off. of Child Support Enf't*, 697 F. App'x 692, 693 (11th Cir. 2017) (citation omitted).

5

## CONCLUSION

For these reasons, Summerlin's motion to dismiss should be granted, and Damsky's Complaint should be dismissed.

                                                        Respectfully submitted,

/s/ *H. Christopher Bartolomucci*
H. Christopher Bartolomucci
D.C. Bar No. 453423
Justin A. Miller*
D.C. Bar No. 90022870
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
Telephone: (202) 787-1060
cbartolomucci@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Admitted *pro hac vice*

*Counsel for Defendant*

Dated: November 4, 2025

6

## CERTIFICATION UNDER LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), I certify that the foregoing is in compliance with the Court's word limit as set forth in Local Rule 7.1(I). According to the word processing program used to prepare this memorandum, the document contains 1,289 words, excluding those portions exempted under the Rule.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I certify that on November 4, 2025, I caused the foregoing Reply Memorandum in Further Support of Motion to Dismiss to be filed with the Clerk of Court, and thereby served on all parties to this matter via the Court's CM/ECF filing system.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

*Counsel for Defendant*