UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PRESTON DAMSKY,

              *Plaintiff*,

v.

CHRIS SUMMERLIN, in his official capacity as Dean of Students of the University of Florida,

              *Defendant*.

No.: 1:25-cv-00275-AW-MAF

**DEFENDANT'S TIME-SENSITIVE MOTION FOR STAY
OR MODIFICATION OF THE PRELIMINARY INJUNCTION
PENDING APPEAL AND MEMORANDUM IN SUPPORT**

Defendant Chris Summerlin, in his official capacity as the Dean of Students of the University of Florida (together, the "University"), moves for an order staying the preliminary injunction entered on November 24, 2025, pending appeal. In the alternative, the University requests a modification permitting Plaintiff Preston Damsky's remote enrollment and participation while maintaining the exclusion of Damsky from physically visiting campus during the pendency of the appeal. This would maintain the status quo that has been in effect since this past April 2025. In any event, the University asks that the preliminary injunction be stayed at least until this Court resolves this motion, and that any response be filed by Tuesday, December 2, 2025.

## MEMORANDUM OF LAW

### INTRODUCTION

On November 24, 2025, the Court granted Damsky's motion for a preliminary injunction, and directed the University to return Damsky to normal standing no later than December 1, 2025, conditioned on a $2,500 bond. Order, Doc. 38. The Court found no evidentiary hearing was necessary and relied on affidavits and the administrative record. Doc. 38 at 2. The University has appealed that decision. Notice of Appeal, Doc. 41.

The University suspended Damsky on April 2 following increased security concerns and student reports of fear after Damsky's March 21 and April 1 posts. Doc. 17-1 at 4–5. The University also trespassed Damsky from campus and later charged him under Student Conduct Code provisions addressing disruptive conduct and harassment. Doc. 38 at 7–9. After a hearing, a University board recommended expulsion, and the Dean adopted the recommendation. Doc. 38 at 10. Damsky remained enrolled and attended classes remotely until an administrative appeals panel affirmed his expulsion on October 9.

### ARGUMENT

The preliminary injunction should be stayed until resolution of the pending appeal, given the substantial questions going to the merits and the University's and its community's fears of the extralegal violence that Damsky has advocated. A stay

2

pending appeal turns on: (1) the movant's likelihood of success on the merits; (2) irreparable injury to the movant; (3) substantial injury to other parties from a stay; and (4) where the public interest lies. When the government is the party opposing (or seeking to alter) an injunction, the third and fourth factors merge with the public interest. *Florida v. HHS*, 19 F.4th 1271, 1293 (11th Cir. 2021).

Under binding Fifth Circuit precedent, for "motions for stay pending appeal the movant need not always show a 'probability' of success on the merits. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981). Instead, a motion can be "granted upon a lesser showing of a substantial case on the merits when the balance of the equities identified in factors 2, 3, and 4 weighs heavily in favor of granting the stay." *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (cleaned up).

These factors favor a stay of the preliminary injunction, or a modification to allow Damsky to enroll but prevent him from physically visiting campus.

## I. The University Has Shown a Substantial Case on the Merits of its Appeal.

### A. Substantial Questions Exist on the Deference Schools Should Be Afforded Regarding Potential School Violence.

On appeal, the University will contend that, even if the speech does not qualify as a "true threat," school authorities reasonably construed it as threatening violence toward a protected group in the school community, triggering the school-safety exception recognized as a "grave and unique" threat category in the educational setting.

The Order acknowledged deference "as a general matter," but conducted a *de novo* interpretive assessment and declined to credit the school's reasonable safety determinations notwithstanding evidence of widespread fear, significant operational responses (police presence, locked doors), and a trespass order contemporaneous with safety concerns. The University can present a substantial case that it deserves more deference for assessing potential threats of extralegal and school violence, like those at issue here, than for interpreting whether a message advocated for illegal drug use, as in the *Morse* decision that this Court relied on. Doc. 38 (citing *Morse v. Frederick*, 551 U.S. 393, 401–03 (2007)). The consequences of a school making a wrong call on the former are fatal. And if the University is correct that Damsky's speech was objectively a true threat, a court must decide the unresolved question of whether a subjective-intent requirement also exists. *See* Doc. 38 at 18 n.10.

### B. The University Has Raised a Substantial Case on the Effect of Damsky's Off-Campus Speech on the University.

The Order assumed off-campus posts are not categorically exempt but concluded that the University's *Tinker* argument would fail absent a sufficient school connection. Doc. 38 at 24. That connection exists, at minimum, from Damsky's equivocation when he responded to a University professor regarding whether he was advocating for the murder of her family.

On appeal, the University will argue that the direct, immediate, and predictable impact on campus operations and participants—including professors and

4

students—makes the posts reasonably school-directed in effect, consistent with the recognition that off-campus threats aimed at school actors may be regulated. The administrative record showed faculty and students reported fear for physical safety tied to Damsky's rhetoric, prompting heightened security and policing. That nexus suffices under the relevant standards. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509, 513 (1969); *Boim v. Fulton Cnty. Sch. Dist.*, 494 F.3d 978, 983–84 & n.5 (11th Cir. 2007).

## II.     The University Will Suffer Irreparable Harm Absent a Stay.

The University faces immediate safety, security, and operational harms from compelled in-person reinstatement of a student whose rhetoric precipitated campus-wide fear, police deployments, locked facilities, and emergency measures. Courts recognize that schools have an "undisputably compelling interest in acting quickly to prevent violence on school property, especially during regular school hours." *Boim*, 494 F.3d at 984; *see also Bloedorn v. Grube*, 631 F.3d 1218, 1238 (11th Cir. 2011) ("The University … has a significant interest in ensuring safety and order on campus[.]"). Being forced to reverse those measures mid-appeal imposes non-compensable harms to public safety and to the University's mission. These harms are irreparable because they implicate safety and institutional autonomy interests that cannot be remedied post-appeal.

## III. The Balance of Equities and the Public Interest Favors a Stay.

"The last two requirements for a preliminary injunction involve a balancing of the equities between the parties and the public. Where the government is the party opposing the preliminary injunction, its interest and harm—the third and fourth elements—merge with the public interest." *Florida*, 19 F.4th at 1293. The Court's finding of irreparable harm to Damsky rests on the merits of his claims. Because that conclusion depends on the underlying merits rulings, a substantial question on appeal weighs in favor of a stay to preserve appellate review and prevent irreversible safety and operational consequences during the appeal.

The Order acknowledged the University's interest in maintaining order but discounted it based on the First Amendment merits conclusion. Doc. 38 at 28; *see also Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 594 U.S. 180, 188 (2021) ("[S]chools have a special interest in regulating speech that materially disrupts classwork or involves substantial disorder or invasion of the rights of others." (cleaned up)); *Bloedorn*, 631 F.3d at 1238 ("The University … has a significant interest in ensuring safety and order on campus[.]").

During appeal, the equities favor preventing potential harms to students and faculty from in-person reinstatement. Absent a stay, the University will be forced to undertake immediate and substantial security measures and risk community disruption while appellate review proceeds. Granting a stay will support the public's

compelling interest in campus safety and orderly operations, particularly in response to widely reported fears and the need for heightened security measures previously implemented by the University. And if Damsky ultimately prevails, he will be able to resume his studies with no effect to him beyond a delay in completing his education. This delay is not an irreparable harm. *See Van Arsdel v. Tex. A&M Univ.*, 628 F.2d 344, 346 (5th Cir. 1980) (vacating preliminary injunction that reinstated plaintiff as a tenured professor because "reinstatement after trial, coupled with back pay, would suffice to redress [his] alleged wrong"); *Faculty Senate Fla. Int'l Univ. v. Winn*, 477 F.Supp.2d 1198, 1208 (S.D. Fla. 2007) (relying on "particularly instructive" *Van Arsdel* decision in finding "it is unlikely that delay in completing [academic] research or obtaining a degree is irreparable harm"). The balance of harms and the public interest favors a stay of the preliminary injunction.

### IV. Alternatively, the Injunction Should Be Modified to Allow Remote Enrollment With No Physical Presence.

Even if a complete stay is denied, the Court should modify its Order to permit Damsky's immediate reinstatement solely through remote enrollment and participation, conditioned on a prohibition against his physical presence on any University campus or facility for the duration of the appeal. The University previously allowed Damsky to remain enrolled and complete a semester remotely after imposing an interim suspension, demonstrating feasibility of remote academic accommodation without physical presence. Given the record of student and faculty

fear and the University's security responses (police presence, locked doors, trespass), a no-physical-presence condition is a narrowly tailored modification that accommodates Damsky's requested academic relief while mitigating safety and operational risks. This alternative aligns the equities and public interest identified by the Court with practical campus safety needs during appellate proceedings.

V. **In Any Event, the Injunction Should Be Stayed Pending Resolution of this Motion.**

The preliminary injunction should be stayed pending resolution of this motion, and any response should be due on Tuesday, December 2, 2025. The preliminary injunction was entered on the Monday before court holidays on Thursday and Friday. It required steps to be taken for Damsky's re-enrollment by December 1. Those steps can be initiated by December 1, but it is too late for Damsky to attend any on-campus classes or prepare for finals. Classes ended on November 19, 2025, and finals begin this upcoming Wednesday, December 3, 2025. *See* UF Levin College of Law, *2025–2026 Academic Calendar*, law.ufl.edu/academics/academic-calendar/.

Damsky is thus too late to attend any classes. And allowing him on campus as finals begin would likely cause another substantial disruption, similar to the one that occurred during finals last semester. *See* Doc. 17-1 at 31 (Tr. 14:19 – 20) ("Students were afraid to study on campus as we headed into finals."); *id.* at 39 (Tr. 22:16–19) ("[A]t at some point it hit the line where that was no longer students who felt

8

threatened personally in their community where they were supposed to be safe and studying for finals."); *id.* at 81 (Tr. 64:21–24) ("My job is to protect the community as best I can and to respond to what I thought was both a serious disruption at a really inopportune time as we headed into finals…."); *id.* at 230 (Tr. 213:1–5, 213:25–214:1) (student "became nervous during finals that [Damsky] might do something retaliatory and either come after me for whatever reason" or otherwise retaliate, so student "did ask to take [his] finals in a locked room"). Accordingly, the University asks that the preliminary injunction be stayed at least until this Court resolves this motion.

## CONCLUSION

For these reasons, the Court's preliminary injunction should be stayed pending appeal, or alternatively, modified to allow Damsky to enroll but prevent him from physically visiting campus. In any event, the University asks that the preliminary injunction be stayed at least until this Court resolves this motion and that any response be due this Tuesday, December 2, 2025.

Respectfully submitted,

/s/ *H. Christopher Bartolomucci*
H. Christopher Bartolomucci
D.C. Bar No. 453423
Justin A. Miller*
D.C. Bar No. 90022870
SCHAERR | JAFFE LLP
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
cbartolomucci@schaerr-jaffe.com
jmiller@schaerr-jaffe.com

*Admitted *pro hac vice*

Brande S. Smith
  *Senior Counsel*
Office of General Counsel
University of Florida
300 SW 13th Street
123 Tigert Hall
Gainesville, FL 32611-3125
(352) 392-1358
brande@ufl.edu

*Counsel for Defendant*

Dated:  November 28, 2025

10

## CERTIFICATION UNDER LOCAL RULE 7.1(C)

Pursuant to Local Rule 7.1(C), I certify that on November 28, 2025, I conferred with counsel for Plaintiff, who stated that he is opposed to a stay of the preliminary injunction.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

## CERTIFICATION UNDER LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), I certify that the foregoing is in compliance with the Court's word limit as set forth in Local Rule 7.1(I).  According to the word processing program used to prepare this memorandum, the document contains 1,918 words, excluding those portions exempted under the Rule.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci

## CERTIFICATE OF SERVICE

I certify that on November 28, 2025, I caused the foregoing Time-Sensitive Motion for Stay or Modification of the Preliminary Injunction Pending Appeal to be filed with the Clerk of Court, and thereby served on all parties to this matter via the Court's CM/ECF filing system.

*/s/ H. Christopher Bartolomucci*
H. Christopher Bartolomucci