**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

PRESTON DAMSKY, a law student
at the University of Florida Levin
College of Law
      Plaintiff,
v.                                                             Case No.:  1:25-cv-275-AW-MAF

CHRIS SUMMERLIN, in his official
capacity as the Dean of Students
of the University of Florida,
      Defendant.

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Preston Damsky, by and through undersigned counsel, files this

Response in Opposition to Defendant's Motion for Summary Judgment and

Incorporated Memorandum of Law, and states:

### INTRODUCTION

Defendant asks this Court to convert offensive political speech into an

unprotected "true threat" and to treat the reactions of listeners as a sufficient

basis for summary judgment. The First Amendment does not permit that result.

This case concerns speech that was controversial, provocative and deeply

unpopular, but the Constitution protects speech precisely when it is most

controversial. A public university may not punish a student simply because his

off-campus speech caused outrage, fear, or condemnation.

1

Defendant's motion fails as a matter of law. The Supreme Court has made clear that speech is unprotected only where it constitutes a "true threat," meaning a serious expression of intent to commit unlawful violence, and that at least recklessness is required before speech may be punished on that basis. *Counterman v. Colorado*, 600 U.S. 66 (2023); *Virginia v. Black*, 538 U.S. 343, 359 (2003). Defendant cannot meet that standard on this record. Nor can Defendant establish that Plaintiff's speech was materially and substantially disruptive under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969). At a minimum, genuine disputes of material fact regarding the alleged disruption preclude summary judgment.

Moreover, this Court has already analyzed the same speech and disciplinary action in granting preliminary injunctive relief, concluding that Plaintiff demonstrated a substantial likelihood of success on the merits because the University had not shown that his speech constituted a true threat or otherwise fell outside First Amendment protection. Although the procedural posture is different, Defendant still bears the burden of demonstrating the absence of any genuine dispute of material fact. It has not done so.

## RESPONSE TO DEFENDANT'S STATEMENT OF THE CASE

Plaintiff does not dispute that he authored the March 21, 2025 post or that he later engaged in an April 1–2, 2025 exchange with Professor Lidsky. Plaintiff also does not dispute that his post referenced the writings of Noel Ignatiev, which are widely known in academic and public discourse. What Plaintiff disputes is Defendant's attempt to characterize those statements as an

2

unambiguous, literal threat of unlawful violence as a matter of law. Plaintiff further disputes Defendant's effort to transform evidence of reaction, fear, and controversy into conclusive proof of punishable disruption. **See ¶ 14, Exhibit 1, Declaration of Preston Damsky.**

## STATEMENT OF MATERIAL FACTS

On March 21, 2025, Plaintiff posted on X a statement referencing Noel Ignatiev and stating that his position mirrored whatever Ignatiev meant by his call to "abolish the White race by any means necessary." Plaintiff's discovery responses confirm that those writings are widely known in academic and public discourse and that Plaintiff is not aware of any individual who communicated to him that they felt threatened as a result of his speech. Plaintiff further stated that the information provided prior to the disciplinary hearing was heavily redacted and that Dean McAlister acknowledged the seminar papers were protected by the First Amendment and received top grades.

In its preliminary-injunction order, this Court found that the law school had previously declined to discipline Plaintiff for those writings, concluding that they did not constitute true threats and were protected expression. The Court further found that Plaintiff's March 21 post expressly conditioned its meaning on Ignatiev's writings and that the later exchange with Professor Lidsky was initially viewed as provocative rather than threatening. The Court also noted the difficulty of separating the effects of Plaintiff's speech from the University's own response.

3

## STANDARD OF REVIEW

Summary judgment is appropriate only where the movant demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. The Court must view all evidence in the light most favorable to the nonmovant and may not weigh evidence or resolve disputes of intent, meaning, or credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Tolan v. Cotton*, 572 U.S. 650 (2014). These principles apply with particular force in First Amendment cases, where context and intent are often dispositive.

## <u>MEMORANDUM OF LAW</u>

### I. PLAINTIFF'S SPEECH DOES NOT CONSTITUTE A TRUE THREAT

The category of "true threats" is narrow and carefully limited. The Supreme Court has held that only a serious expression of intent to commit unlawful violence falls outside First Amendment protection, and even then, the speaker must at least act recklessly as to how the statement will be perceived. *Counterman*, 600 U.S. 66; *Black*, 538 U.S. at 359. Offensive, hateful, or disturbing speech is not enough. Political hyperbole remains protected. *Watts v. United States*, 394 U.S. 705 (1969). Likewise, abstract advocacy—even of force—is protected absent incitement. *Brandenburg v. Ohio,* 395 U.S. 444 (1969).

Here, Defendant cannot meet that standard as a matter of law. Plaintiff's post did not identify any specific individual, did not describe any plan or course of action, and did not communicate any intent to carry out violence. Instead, the statement expressly tied its meaning to the writings of Noel Ignatiev, placing it within a broader ideological and academic framework. Plaintiff has also

4

submitted a sworn declaration confirming that his statement was intended as rhetorical and ideological commentary, not as a threat of violence. **See Exhibit 1 (Declaration of Preston Damsky).**The constitutional inquiry requires the Court to evaluate the statement in context, not in isolation.

Defendant's argument depends on stripping away that context and treating the statement as a literal declaration of violence. The law does not permit that approach. The later exchange with Professor Lidsky likewise does not eliminate factual dispute. As this Court has already observed, the exchange was initially perceived as provocative rather than threatening, and Plaintiff's responses remained argumentative and rhetorical. At minimum, the meaning and intent of these statements are disputed, and Defendant is not entitled to summary judgment by insisting that its interpretation is the only reasonable one.

## II. DEFENDANT CANNOT ESTABLISH A CONSTITUTIONALLY SUFFICIENT SUBSTANTIAL DISRUPTION

Defendant also contends that Plaintiff's speech was punishable because it caused disruption. That argument fails. Under *Tinker*, speech cannot be restricted based on "undifferentiated fear or apprehension." 393 U.S. at 508. The First Amendment does not allow speech to lose protection simply because it provokes strong reactions.

The record reflects controversy, alarm, and administrative response, but it does not conclusively establish disruption attributable to unprotected speech. As this Court has already recognized, it is difficult to separate the effects of

Plaintiff's speech from the effects of the University's own response, including increased security and campus restrictions.

The Supreme Court has repeatedly held that speech cannot be suppressed simply because it is offensive or upsetting. *Texas v. Johnson*, 491 U.S. 397 (1989); *Snyder v. Phelps*, 562 U.S. 443 (2011). Nor may the government rely on a "heckler's veto" to justify punishment. Defendant's theory depends precisely on that forbidden move—listeners reacted strongly, therefore the speech lost protection. That is not the law.

## III. GENUINE DISPUTES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT

Defendant's motion ultimately depends on resolving disputed issues of fact, including the meaning of Plaintiff's statements, whether they would reasonably be understood as threats, whether Plaintiff acted with the required mental state, and whether any alleged disruption was caused by the speech itself or by the University's response. These are not issues that can be resolved as a matter of law on this record. Under Rule 56, summary judgment must be denied where such disputes exist.  Further, Damsky's communications with students and observations of campus life during the relevant time period prove that there was no disruption on campus during the time when my remarks were made, and the campus operated normally during the events at issue in this case.  No substantial disruption occurred on campus. **See ¶ 14, Exhibit 1, Declaration of Preston Damsky.**

## CONCLUSION

Defendant has not shown that Plaintiff's speech constitutes a true threat as a matter of law, nor has it established that the speech caused a constitutionally sufficient disruption. Defendant has likewise failed to demonstrate the absence of genuine disputes of material fact. Accordingly, Defendant's Motion for Summary Judgment should be denied.

**Dated**: March 27, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI, ESQ.
FL BAR No. 1018163
SABATINI LAW FIRM, P.A.
1601 E. 1ST AVENUE
MOUNT DORA, FL 32757
T: (352)-455-2928
anthony@sabatinilegal.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 27, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Anthony F. Sabatini*

**Exhibit 1**

**DECLARATION OF PRESTON DAMSKY**

I, Preston Damsky, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am the Plaintiff in this action and have personal knowledge of the facts set forth herein. I submit this declaration in support of my opposition to Defendant's Motion for Summary Judgment.

2. I am a law student who, at all relevant times, was enrolled at the University of Florida Levin College of Law. My academic work and public commentary have focused on legal, constitutional, and political theory, including controversial and unpopular viewpoints. As reflected in my Complaint, my academic writings addressed historical and structural questions about the United States, including arguments concerning the nature of the nation's founding and legal development.

3. During the Fall 2024 semester, I authored two seminar papers that became the subject of controversy after one was circulated among students without my consent. Despite disagreement with my views, neither of my professors expressed that they felt threatened by me or believed that my work constituted a threat, harassment, or disruption. I received high grades for my work, including a book award in one course, and at no time during those courses did any professor indicate that I had engaged in threatening conduct.

4. At all relevant times, I have never intended to threaten, intimidate, or harm any person. I have never formulated any plan or taken any action to commit violence against any individual or group. I have never possessed any intent to carry out a shooting or any other act of violence, and I have never communicated such intent to anyone.

5. On March 21, 2025, while off campus and on Spring Break, I posted a statement on Twitter referencing the writings of Noel Ignatiev. My statement expressly tied its meaning to what Professor Ignatiev meant by his call to "abolish the White race by any means necessary." My intent in making that statement was to engage in rhetorical and ideological commentary on academic and political ideas, not to communicate any literal intent to harm anyone.

6. At the time I made that statement, I was aware that Noel Ignatiev did not advocate for violence and that his work was widely discussed in academic and public discourse. My reference to Ignatiev was deliberate and intended to signal that my statement should be understood in that same

8

intellectual and rhetorical context. I did not intend for any reasonable person to interpret my statement as a serious expression of intent to commit violence.

7. I did not direct my statement toward any specific individual. I did not identify any target, location, or plan. I did not intend to place anyone in fear of physical harm. To the extent that my statement caused offense or discomfort, that was not my intent, and it was not my purpose to threaten anyone.

8. Following that post, I engaged in an exchange with Professor Lidsky on Twitter. My responses in that exchange continued the same rhetorical and argumentative discussion regarding Ignatiev's ideas and their interpretation. I did not state that I would harm Professor Lidsky or any member of her family, and I did not intend my responses to be interpreted as threats. My responses were part of an ongoing ideological and rhetorical discussion, not a statement of intent to commit violence.

9. At no point has any individual personally communicated to me that they believed I intended to harm them. I am not aware of any individual who directly told me that they felt threatened by my statements. As reflected in the University's own proceedings, no witness testified that I threatened them.

10. After my social media activity became known within the University community, I was placed on interim suspension and barred from campus. Law enforcement officers came to my home and issued a trespass notice despite the fact that I had not committed any crime and had not engaged in any act of violence.

11. I attempted to continue my academic work remotely and to comply with the University's directives while maintaining my education. Throughout this time, I remained willing to cooperate with the University and to address any concerns through appropriate channels.

12. Based on my understanding, the disciplinary actions taken against me were based on interpretations of my speech rather than any actual conduct indicating intent to commit violence. I have consistently maintained that my speech was protected expression and that it was not intended as a threat.

13. I declare unequivocally that I did not intend to threaten any person, did not intend to communicate a serious expression of intent to commit violence, and did not act with any awareness that my statements would be understood as such.

14. I also continued to view law school classes via Zoom during my absence from campus and continued to communicate with students at the law school.  Each of them told me there was no disruption on campus during the time when my remarks were made, and the campus operated normally during the events at issue in this case.  No substantial disruption occurred on campus.

15. I make this declaration to clarify my intent, the context of my statements, and the absence of any threat or intent to harm.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on: March 27, 2026

*/s/ Preston Damsky*
Preston Damsky